**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Ellen Dewey, | No. CV-07-1660-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael Astrue, | |
| Defendant. | |

The court has before it plaintiff's motion for summary judgment (doc. 10), and defendant's response and cross-motion for summary judgment (doc. 15). Plaintiff did not respond to defendant's cross-motion.

**I.**

On September 22, 2003, plaintiff filed an application for disability insurance benefits, alleging disability since November 12, 2002, due to congestive heart failure and back surgery. Plaintiff's application was denied initially and upon reconsideration. Following a hearing on January 10, 2006, the administrative law judge ("ALJ") determined that plaintiff was entitled to benefits for a closed period from June 1, 2003 through July 19, 2004. The ALJ concluded that after July 19, 2004, plaintiff's residual functional capacity ("RFC") had improved such that she was no longer disabled. The decision became final when the Appeals Council denied plaintiff's request for review. She then filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

1    We may set aside a denial of benefits "only if it is not supported by substantial
2 evidence or if it is based on legal error." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.
3 2002). Substantial evidence is "relevant evidence which, considering the record as a whole,
4 a reasonable person might accept as adequate to support a conclusion. Where the evidence
5 is susceptible to more than one rational interpretation, one of which supports the ALJ's
6 decision, the ALJ's conclusion must be upheld." Id. (citation omitted); see also 42 U.S.C.
7 § 405(g).

8    Plaintiff underwent lumbar surgery on November 12, 2002, performed by Randall
9 Porter, M.D. She was later hospitalized from April 6 through April 10, 2003, due to
10 complaints of severe headaches, neck pain, and shortness of breath, and was diagnosed with
11 congestive heart failure. Follow-up care with Padmini Tummala, M.D., on April 24, 2003,
12 showed that plaintiff was "doing much better." Tr. 192. Her breathing had improved, but
13 she still tired easily. Dr. Tummala recommended regular exercise and a low cholesterol diet.
14 Tr. 193.

15    On August 28, 2003, Dr. Porter reported that plaintiff was "doing very well" post-
16 surgery, but after a difficult lumbar puncture she began experiencing low back pain and was
17 unable to stand for long periods of time. Tr. 240. Dr. Porter recommended physical therapy.

18    On December 11, 2003, Dr. Tummala reported that plaintiff "is doing well," however,
19 she reported "easy fatigability." Tr. 186. Dr. Tummala completed a physical functional
20 capacity assessment, and determined that plaintiff could occasionally lift twenty pounds and
21 frequently lift ten pounds, stand/walk for two hours in an eight-hour day, sit for six hours,
22 and occasionally perform postural activities. Dr. Tummala diagnosed non-ischemic
23 cardiomyopathy. Tr. 194-95.

24    On July 9, 2004, Deepak Khosla, M.D., noted that "from a cardiac standpoint,
25 [plaintiff] seems to be doing very well," and that she is "stable." Tr. 292.

26    On July 20, 2004, state agency psychiatrist Wayne F. Winn, M.D., concluded that
27 plaintiff did not have a medically determinable mental impairment. Tr. 297. He
28 acknowledged that plaintiff had reported memory problems due to her physical symptoms

1 and medication, but stated that there was no history of psychiatric treatment and no
2 identifiable mental disorder. Tr. 309.

3 On August 4, 2004, a state agency physician reviewed plaintiff's medical record and
4 completed a functional capacity assessment. The doctor concluded that plaintiff could
5 occasionally lift ten and frequently less than ten pounds; stand/walk for two hours; and sit
6 for six hours in an eight-hour workday. Tr. 311-18.

7 At the hearing, plaintiff testified that she had been diagnosed with active congestive
8 heart failure after her back surgery, but indicated that her condition was stable. Tr. 411-12.
9 She testified that she folded laundry, drove to the grocery store and to her children's school,
10 washed dishes, swept the front porch, and dusted. Tr. 415, 420-21. She did housework for
11 thirty minutes at a time and then rested. Tr. 421-22. She could walk "two sides of a four
12 sided block," stand for about fifteen minutes without support, and sit for a half hour. Tr. 416-
13 17. She estimated she could lift ten pounds. Tr. 417.

14 The ALJ asked the vocational expert to consider an individual who was limited to
15 lifting ten pounds occasionally, could sit for six hours and stand or walk for two hours in an
16 eight-hour work day, was limited to occasional postural activities and had to avoid hazardous
17 conditions. Tr. 429. The VE testified that such an individual could perform plaintiff's past
18 telephone survey work. He also testified that the hypothetical person could work in other
19 unskilled, sedentary jobs, such as telemarketing, which he noted has a stand/sit option, as
20 well as cashier positions in courtesy booths, fuel islands, and parking lots. Tr. 429-30.

21 The ALJ conducted the five-step sequential disability analysis, 20 C.F.R. § 404.1520,
22 and found that plaintiff was previously employed in sedentary work as a telephone surveyor.
23 She had a back disorder with successful surgery, a heart disorder, and arthritis of the knees,
24 which were severe impairments, but did not alone, or in combination, meet or equal an
25 impairment listing. The ALJ determined that for the period of June 1, 2003 through July 19,
26 2004, plaintiff's RFC was less than sedentary; therefore she was unable to perform her past
27 relevant work or any other work in the national economy. The ALJ concluded that during
28 this period plaintiff was disabled and entitled to benefits.

1    The ALJ then found that as of July 19, 2004, plaintiff had sufficient time to recover
2 from her back surgery and was stable on her medications for her heart condition. He
3 concluded that plaintiff was able to sit for six hours in an eight-hour workday, stand/walk for
4 two hours, lift and/or carry ten pounds frequently, and ten pounds occasionally. She could
5 occasionally climb, bend, crouch, and crawl. Therefore, as of July 19, 2004, plaintiff's
6 medical condition had improved such that her RFC allowed her to once again perform
7 sedentary work, including her previous telephone survey work.

## II.

9    Plaintiff presents two challenges to the ALJ's decision. First, she claims that the ALJ
10 improperly relied on the findings of state agency psychiatric physician, Dr. Winn, in
11 concluding that she experienced medical improvement and was no longer disabled after July
12 19, 2004. Tr. 297. She contends that reliance on Dr. Winn's psychiatric assessment is
13 inappropriate because she did not base her claim on a psychiatric disorder. While this date
14 coincides with Dr. Winn's report, it also generally comports with Dr. Khosla's July 9, 2004
15 finding that plaintiff was stable and doing "very well" from a cardiac standpoint. Tr. 292.
16 Dr. Khosla's conclusion would have reasonably supported a discontinuation of benefits as
17 of July 9, 2004. In any event, in determining whether a disability continues or ends, it is not
18 the day that controls, but the month. See 20 C.F.R. § 404.1594(g). The ALJ's conclusion
19 that as of July 19, 2004, plaintiff's impairments had improved to the point that she could
20 perform sedentary work is supported by substantial evidence.

21    Plaintiff also contends that the ALJ erred in failing to appropriately consider the
22 impairment to her knees when he concluded that she was no longer disabled as of July 19,
23 2004. She began experiencing problems with her right knee in June, 2004. On November
24 18, 2004, Mark Zachary, M.D., performed arthroscopic surgery to correct a meniscus tear
25 in her right knee. Tr. 353. In March 2005, plaintiff returned to Dr. Zachary with complaints
26 related to her left knee. Dr. Zachary noted that there was no instability in plaintiff's right
27 knee at this time. Plaintiff underwent arthroscopic surgery to correct a meniscus tear in her
28 left knee on April 21, 2005.

- 4 -

The ALJ concluded that plaintiff's knee impairment did not cause significant limitations in her ability to function for a continuous period of twelve consecutive months as required by 20 C.F.R. § 404.1505(a). Plaintiff challenges this conclusion, arguing that Dr. Zachary's May 18, 2005 letter indicated that plaintiff has osteoarthritis in both knees and would need Synvisc injections to the knees. Tr. 340. However, despite the need for ongoing treatment, there is no evidence in the record that plaintiff was unable to perform any substantial gainful activity by reason of her knee impairment, either considered alone or in combination with other impairments, for a continuous period of more than twelve months. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999) (holding that plaintiff carries the burden of proving disability). We conclude that substantial evidence supports the ALJ's decision that plaintiff was no longer eligible for benefits after July 19, 2004.

## III.

**IT IS ORDERED DENYING** plaintiff's motion for summary judgment (doc. 10) and **GRANTING** defendant's motion for summary judgment (doc. 15).

DATED this 24th day of April, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge